## SAMUEL SALISBURY *et al. versus* JACOB BIGELOW *et al.*

Where land was conveyed upon various trusts, with a power to sell, and the trustees, intending to annul the trusts, reconveyed to the grantor, who thereby took the legal estate but not discharged of the trusts, and he thereupon again conveyed to the trustees to hold the estate for the same uses and purposes and as fully in every respect, as under the original conveyance to them, it was *held*, that the power of the trustees to sell was revived.

BILL in equity, brought by Samuel Salisbury and Nancy his wife, and their children, two of whom were infants suing by their next friend, Joseph Sewall, John Tappan, Aaron P. Cleveland, and David Stoddard, against Jacob Bigelow, and George W. Pratt, to compel the specific performance of an agreement for the purchase of certain land.

The complainants allege ; —

That Salisbury, for some time before April 14, 1836, was seised and possessed in fee simple, of certain lands and tenements on the southerly side of Summer street, in Boston ; that on that day the defendants, by articles of agreement between them and Salisbury, agreed to purchase a part of the same upon the terms and conditions therein contained ; that Salisbury therein covenanted that, for the consideration therein mentioned he and every person claiming any right under

him, would and should convey such part to the defendants, with covenants that the same was free of all incumbrances.

The bill further states, that Salisbury, being so seised, did, on March 31, 1821, become a party to an indenture, between Salisbury and wife, of the first part, Sewall, Tappan, and Josiah Salisbury, of the second part, and Cleveland and Stoddard, of the third part, wherein Samuel Salisbury, for the purpose of making provision for the support of his wife and the maintenance and education of his children, conveyed the land to Sewall, Tappan, and J. Salisbury, and their heirs, to the uses and upon the trusts therein declared, that is to say, to the use of Sewall, Tappan and J. Salisbury, the survivors and survivor of them, for the term of ninety-nine years, to the use of Samuel Salisbury's wife and her heirs during his life, and after the determination of that estate, by forfeiture or otherwise, in his lifetime, to the use of Cleveland and Stoddard and their heirs, during his life, upon trust to preserve the contingent uses and estates therein after limited, — and after his decease, subject to the uses of all or any one, to the exclusion of any one, of his children or grandchildren or other issue, for such shares in the land as he in his lifetime, by any deed or writing, should direct or appoint, and in default of such direction or appointment, to the use of his children and the lawful issue of any child who might die before him, to be equally divided between them, — that the term of ninety-nine years limited in use to Sewall, Tappan and J. Salisbury, the survivors and the survivor, was so limited to them upon trust, to permit and empower the wife of Samuel Salisbury, during his natural life, if he should so long live, to have and receive the rents and profits of the land, for her own sole and separate use, so that the same should not be subject to his control nor liable to his debts, — that it was also provided, that upon his decease the term of ninety-nine years should cease and be void, — that it was further provided, that it should be lawful for Sewall, Tappan and J. Salisbury, the survivor and survivors of them, or either, the acting trustee or trustees for the time being, at any time during the continuance of the term of ninety-nine years, to sell, dispose of, and convey, all or any part of the land, and the fee simple and inheritance thereof, to any person

Salisbury
v.
Bigelow.

or persons, either together or in parcels, by public sale or private contract, for such price or prices as to them or either of them should seem reasonable, and to give sufficient receipts for the money for which any of the land should be sold, which receipts should be a sufficient discharge to any purchaser for the money expressed to be received, and he should not be required to see to the application of the money ; and when the sale should be completed, the land sold should be thenceforth discharged from all the uses, estates and trusts contained in the indenture, — and all money arising from the sale, should be invested by the acting trustee or trustees in the purchase of other lands to the same uses, upon and for the same trusts and purposes, and subject to the same provisions, — that it should be lawful for the trustee or trustees for the time being, by lease, sale or mortgage, to raise money for advancing any of the children or grandchildren in business, or for a marriage portion ; and that in case any of the trustees should die, it should be lawful for the surviving trustee or trustees, by writing, to appoint some other person or persons to supply the place of the trustee or trustees so dying ; —

That in and by another indenture, dated September 11, 1833, between Sewall and Tappan (J. Salisbury having deceased), Cleveland and Stoddard, of the first part, Samuel Salisbury, with the approbation and consent of his wife, expressed by her being a party to the indenture, of the second part, and such of his children as were of age, of the third part, it was declared to be the wish of all the parties interested in the settlement in the first indenture, to cancel and annul the trusts therein set forth, and to reconvey the land to Samuel Salisbury in the same full and absolute manner in which it was before possessed and enjoyed by him, and to carry this intention into effect, Sewall and Tappan, with the consent of Salisbury's wife, expressed by her signature to the indenture, Cleveland and Stoddard, and such of Salisbury's children as were of age, transferred to Salisbury, his heirs and assigns, all the right, title, interest, estate, claim and possibility, which they and each of them had or might thereafter have, whether vested or contingent, legal or equitable, in possession, remainder or reversion, in and to the land ; —

That in and by the indenture last mentioned, Samuel Salisbury became seised and possessed of the land in fee simple, and had good right to sell, convey and assure any part thereof to the defendants, or either of·them, their heirs and assigns, and that on August 1, 1836, he executed and tendered sufficient deeds, and requested them to perform their agreement, but that they refused so to do ; —

That since the tendering of the deeds, Sewall and Tappan, by their writing dated September 5, 1836, appointed Nathaniel Chauncey to be a trustee in the place of Josiah Salisbury, deceased, and that on September 6th Samuel Salisbury, by his deed, sold and conveyed the land described in the indentures, to Sewall, Tappan and Chauncey, their heirs and assigns, in trust, for the uses and purposes, as fully in every respect, as in and by the first indenture is provided ; —

That Sewall, Tappan and Chauncey, as trustees under the deed of the 6th of September, did on the 13th of September, by their deeds of that date, sell and convey to the defendants the land agreed to be conveyed to them by the agreement first mentioned, of the 14th of April, 1836 ;—

And that since the making of the deeds by Salisbury to the defendants, the plaintiffs have several times applied to the defendants to receive those deeds or to receive the deeds executed by Sewall, Tappan and Chauncey as trustees, and perform their agreement with Salisbury, but that the defendants decline to accept either of the deeds and refuse to fulfil their agreement.

The defendants demurred to the bill, because the deeds tendered by Salisbury, and those executed by Sewall, Tappan and Chauncey, did not and could not convey a good and sufficient title to the land, but the title was incumbered and charged with divers trusts, and liable to be defeated, either in whole or part, by sundry contingencies and conditions, and to be determined by various limitations.

*C. P. Curtis* and *B. R. Curtis*, in support of the demurrer, said that the reconveyance to Salisbury by the trustees, in 1833, vested in him the legal estate, but that it did not defeat the trusts in favor of Mrs. Salisbury and the children and grandchildren. Mrs. Salisbury and the infants and the unborn

Salisbury
v.
Bigelow.

children and grandchildren were incapable of consenting to such reconveyance. *Hildreth* v. *Eliot*, 8 Pick. 293. So that the deeds tendered by Salisbury would not have passed a perfect title.

In 1836, Sewall and Tappan appointed Chauncey a trustee in the place of the deceased trustee, and Salisbury made a conveyance of the land to Sewall, Tappan and Chauncey, subject to the original trusts, for the purpose of restoring the property to the same situation in which it was before the reconveyance to Salisbury in 1833 ; and the trustees tendered deeds to the defendants, doubtless in execution of Salisbury's contract with the defendants, and under the power given to the trustees in the original indenture, to sell and convey at any time during the continuance of the term of ninety-nine years. But by the reconveyance in 1833, by the acting trustees and the trustees to preserve contingent remainders, the whole legal estate passed to Salisbury, and the term was destroyed. It is true, that by the new indenture a power to sell was given ; but the power under the old indenture must be exercised in order to destroy the trusts created by that indenture. The power of sale, however, was an appendant power, and the estate to which it was appendant having merged in the fee, it ceased to be in force. Consequently the deeds tendered by the trustees were insufficient. Sugden on Powers, 43 ; Ibid. 78, cites *Kirkpatrick* v. *Capel* ; *Doe* v. *Brittain*, 2 Barn. & Ald. 93 ; *Thorpe* v. *Goodall*, 17 Ves. 388.

The power of appointing a new trustee, being an appendant power, was destroyed with the legal estate to which it was appendant, and the appointment of Chauncey was made when the two surviving trustees had no estate. It may be said that the power of sale was in the survivors, but though, if Chauncey had not been appointed, they might possibly sell under the original indenture, yet as a part of the legal estate is in Chauncey, the two survivors cannot convey the whole legal estate.

*J. T. Austin* and *E. G. Austin*, for the plaintiffs. The conveyance of 1833 vested the legal estate in Salisbury, relieved of the trusts in favor of such of the cestui-que-trusts as were capable of joining in the deed, and as the two infants, by their next friend, are made parties to this bill, the Court

may decree a conveyance by Salisbury, relieved of all the trusts. Jeremy on Eq. Jurisd. 24, 25 ; *Winnington* v. *Foley,* 1 P. Wms. 536 ; 2 Fonbl. 170 ; *Inwood* v. *Twyne,* Ambl. 417 ; 3 Stewart on Conveyancing, 165.

If Salisbury cannot convey a sufficient title to the defendants, then we say the estate was revested in the trustees as under the original indenture, in one of several ways : either, 1. if the trustees exceeded their power in conveying to Salisbury, it was a breach of trust, committed through mistake, and the Court may consider the conveyance void and order it to be cancelled ; Jeremy on Eq. Jurisd. 153 ; *Pye* v. *Gorge,* 1 P. Wms. 128 ; or, 2. as the conveyance has never been recorded, if the parties agreed to cancel it, and this could be done without prejudice to the rights of others, the conveyance became void, and the estate remained in the trustees by the original indenture ; *Marshall* v. *Fisk,* 6 Mass. R. 24 ; *Woodward* v. *Aston,* 1 Ventr. 296 ; *Commonwealth* v. *Dudley,* 10 Mass. R. 403 ; *Cutts* v. *United States,* 1 Gallison, 73 ; Shep. Touchst. 69, 70 ; or 3. if the estate, legal or equitable, passed to Salisbury in 1833, his deed of 1836 restored to the trustees all that they conveyed to him. In case the estate was revested in the trustees as under the indenture of 1821, then, by virtue of their power to sell under that indenture, their deeds to the defendants will be sufficient to convey an absolute title unincumbered by any trust.

WILDE J. delivered the opinion of the Court. This bill is brought to compel the defendants to perform an agreement for the purchase of real estate, to which the defendants have filed a demurrer, and the question is whether upon the facts set forth in the bill the defendants are bound to complete their purchase.

*April 6th, 1838*

The objection is, that the deeds tendered to the defendants did not and could not convey to them a good and valid title to the lands purchased, but that the same was defective, and that the land was charged with divers trusts whereby the title, on the happening of certain contingencies, was liable in whole or in part to be defeated. If this objection is well founded, or if the title offered should appear on examination to be doubtful, the Court will not decree a specific performance

against the purchasers, but they must be discharged from their contract. It is therefore necessary to inquire into the title offered to be conveyed, and to ascertain whether it is a clear and perfect title, free from all incumbrances legal and equitable, and if not, whether it can be made so by any further assurances in the power of the plaintiffs to give.

It is averred in the bill, that previous to the defendants' agreement to purchase, Samuel Salisbury, one of the plaintiffs, was seised and possessed in fee simple of certain lands and tenements on the southerly side of Summer street, including the estate agreed to be conveyed to the defendants, and that in the year 1821 he conveyed the same to trustees, to certain uses and upon certain trusts, for the purpose of making provision for the support of his wife, and for the maintenance and education of his children ; and that afterwards, in the year 1833, the trustees reconveyed the same lands and tenements to Samuel Salisbury, and that his wife and children then living, excepting two minor children, joined in the conveyance, for the purpose of cancelling and annulling the trusts created by the deed of 1821, as is expressed in the deed of reconveyance. By this latter deed Samuel Salisbury became reseised of the lands and tenements before conveyed in trust, and soon after, as the bill avers, he made, executed, and tendered to the defendants, in pursuance of the agreement of sale and purchase, good and sufficient deeds of the lands purchased, with covenants of warranty, which they refused to accept That those deeds would have conveyed to the defendants, if they had been accepted, a good and sufficient legal estate, cannot be doubted, and it is equally clear that the estate would have remained in their hands charged with the original trusts, because the trusts could not be annulled by the reconveyance, excepting as to those who were parties to that deed. After these deeds were refused, Samuel Salisbury reconveyed the lands and tenements before conveyed to trustees in 1821, to two of the same trustees, and to a third trustee who had been appointed to succeed to the other original trustee, who had before that time deceased.

In the original deed of trust full power was given to the trustees to sell and convey any part of the trust estate fully

discharged from all trusts, and to the sole use of any purchaser or purchasers, and to his and their heirs and assigns. But it has been argued by the defendants' counsel, that this power was extinguished by the reconveyance to Samuel Salisbury, and that it cannot revive, so as to enable the present trustees to convey a good title to a purchaser, discharged from the trusts.

That the power was extinguished by the reconveyance to the original donor, is very clearly established by all the authorities. The power, so far as it depended on the estate granted to the trustees to whom the power was given, was a power appendant or appurtenant to the estate, and so far as it depended or operated upon the remainder, it was a power in gross. It is also very clear that the total alienation of the estate to which a power is appendant, operates as an extinguishment of the power "Thus, if tenant for life, with a power to grant leases in possession, convey away his life-estate, the power is gone ; it is no longer possible for the donee to execute it, inasmuch as it would be derogatory to his grant." Sugden on Powers, (1st Amer. edit.) 54. But if he grant a part only of his estate, the power is suspended, and may be afterwards exercised, although the vesting of the estate will be postponed. In the present case the power, in its creation, was intended to pass the whole fee, and as the donees of it, by their reconveyance of their estate to the donor, disabled themselves from exercising it to that extent, it was extinguished *in toto*. And this was manifestly the intention of the parties, as is clearly expressed in the deed of reconveyance.

Unless, therefore, this power was revived, or a new power was well created, by the reconveyance from Salisbury to the trustees, they clearly cannot convey a good title to the defendants. In deciding this question, which was not fully argued by counsel, we at first entertained some doubts whether there were not technical rules in respect to the settlements of estates, which might control by authority, what seemed to be very clear in principle ; but on examination we find no such authority. And in absence of all authority, we could entertain no doubt how a question like this should be decided.

Salisbury
v.
Bigelow.

It would seem to be clear, that the power which was extinguished by the trustees' conveyance of the legal estate to the original donor, was revived by his reconveyance to them. By the terms of the reconveyance the trustees were " to hold the estate for the same uses and purposes, and as fully in every respect, as they were held under the first conveyance." Powers which derive their effect from the statute of uses are denominated contingent uses ; the power of sale therefore might be included either in the word " uses " or " purposes," and there can be no doubt that it was the intention of the parties to revive the power of sale, and we can perceive no legal objection to the effectuating of that intention.

" Courts of law and courts of equity," as *Wilmot* J. remarked in the case of *Zouch* v. *Woolston*, 2 Burr. 1147, " ought to concur in supporting the execution of similar powers, which are very useful to families ; and they ought not to listen to nice distinctions that savour of the sophistry of schools ; but to be guided by true good sense and manly reason."

And in the same case, Lord *Mansfield* said that such powers ought to be construed liberally, equitably, and according to the intention of the parties.

It has been argued that a voluntary settlement fairly made is always binding upon the grantor, and that he has no power, unless a power of revocation is reserved, to resume the estate and make a new settlement. This proposition is undoubtedly maintained by the current of the authorities, although there are some cases in which a different doctrine has been held. In *Naldred* v. *Gilham*, 1 P. Wms. 577, a second settlement was sanctioned by Lord *Macclesfield*, but that depended upon particular circumstances. The same decision was made in *Cotton* v. *King*, 1 P. Wms. 358 ; and in *Wallwyn* v. *Coutts*, 3 Meriv. 707, it was held, that where a deed of trust was made for the benefit of creditors who were not parties to the deed, and had no knowledge of it at the time, the grantor was at liberty to create new trusts, and a bill for an injunction against the trustees to restrain them from executing the subsequent trusts, brought by a creditor under the first deed, was dismissed. Notwithstanding these decisions, it

seems to be a well settled principle of equity, that when a voluntary settlement is fairly made, it cannot be annulled by the settler, unless a power of revocation be reserved for that purpose. It was so decided by Chancellor *Kent*, in the case of *Souverbye* v. *Arden*, 1 Johns. Ch. R. 258.

But this question is not involved in the present case. Salisbury, by the reconveyance to him by the trustees, became seised of the whole legal estate, and might convey it either to new uses and trusts or otherwise, subject to all the uses and trusts of the first settlement. This right is necessarily incident to his legal title.

The case of *Roper* v. *Hallifax*, 8 Taunt. 845, was decided on a similar distinction. There was in that case a settlement, with a power of sale in the trustees, with the consent of the tenant for life. A recovery was had, in which the tenant in tail was vouched and new uses were raised, but as the recovery enured to confirm the estates previous to the estate tail and the powers annexed to them, it was decided that the power was not extinguished. So in *Bullock* v. *Thorne*, Moore, 615, it was said that a fine would not extinguish a power which was intended for further assurance, and as a confirmation of the power. The innocent intention prevents the recovery from ransacking the whole estate, and extinguishing the powers. Sugden on Powers, (1st Amer. edit.) 70.

And if a power should be extinguished by a conveyance of the estate to which it is appendant, it may be revived by a reconveyance.

This appears to have been admitted in a case reported by Sugden, in his Treatise of Powers. A was tenant for life, under a settlement with remainders over, in which there was a power of sale and exchange to be exercised with her consent. On her marriage she conveyed all her estates to trustees upon certain trusts, remainder to such uses as she should by deed or will appoint. It was objected by a purchaser, that A's power to consent to a sale was suspended or extinguished by her conveyance. In order to obviate all difficulty it was recommended that A, having the power of appointment, by her conveyance in trust, should appoint the estate to herself for life, whereby she would be in of her old use, and might

well execute her power. The case was not decided, as the purchaser chose to be himself at the expense of an act of parliament, by which the power was confirmed. But no doubt is suggested by Sugden but that the course recommended would have been effectual, and in a similar case Lord *Eldon* was of opinion that an act of parliament was unnecessary, and that there was no ground for the doubt. Sugden, 57, 71.

These cases seem to show, that every act of the parties interested in a settlement, done with the intention of confirming the original uses, trusts and powers contained in the settlement, are to receive the most favorable construction. And the same construction should be given to every act done for the purpose of reviving a power which by mistake had been suspended or extinguished. It seems then to be reasonable and agreeable to equity, that when the parties interested in the settlement in question, discovered that an innocent mistake had been made, they should be allowed to correct it by restoring the estate to its original condition, with the same powers, and to the same uses and trusts, as were created by the original settlement. And this was all that was done by Salisbury's second conveyance to the trustees. Whether this operated so as to revive the old power, or to create a new one precisely like it, does not appear to be material. Salisbury being the owner of the estate, was enabled to create a new power, and if it was in all respects similar to the power first created, there seems to be no ground on which the cestui-que trusts can object.

It seems to be clear, that if property is conveyed to a trustee, and is afterwards reconveyed to the original grantor, he may convey it again to the same trustee, with new and additional trusts, provided the same do not affect the original trusts. For by the reconveyance the legal estate revests in the original owner, charged only with the trusts, and he may well make additional limitations not inconsistent with the trusts previously created. In the present case no new trusts were created by the reconveyance to the trustees ; the sole object of it was to enable them to perform the original trusts ; and it seems impossible that such a transaction should be considered ineffectual or inconsistent with any principle of law or equity

Salisbury
*v.*
Bigelow.

We are therefore of opinion, that the present trustees can convey to the defendants a good and perfect title to the estates purchased, free and clear from all trusts, charges and limitations created by the original grant and settlement of the estate.

If, however, the defendants require any further assurance, the plaintiffs we think are bound to give it. By the original settlement the trustees were to hold the trust estates for the use and benefit of Mrs. Salisbury and her heirs during the life of her husband ; and after his decease, subject to the uses of all or any one of his children or grandchildren, as the said Salisbury in his lifetime, by any deed in writing, should direct or appoint. This power of appointment being reserved in the original settlement as a part of the old dominion, is not defeated or affected by the subsequent conveyances, and may be now well executed by limiting the uses and trusts, to take effect after his decease, to any one or more of his children, which will annul all the remaining trusts, and a conveyance by them will effectually discharge all uses and trusts, unless Salisbury should survive his wife, in which case the trust would vest in her heirs during his life. This would be a defect in the title thus conveyed, but if the defendants require such a conveyance, it ought not to be refused. We do not, however, consider such a conveyance as very material, being of opinion that the trustees can convey a good and perfect title to the lands purchased, without any further assurance. If these conveyances be made by the trustees, and by Mr. and Mrs. Salisbury, and if required, by their children to whose use the estates shall be limited, we are of opinion, that the defendants will be bound to complete their purchase.

Referred to the master to prepare deeds of conveyance, &c.